# Lenhart, Appellant, *v.* Wright et al.

*Road law—Turnpikes—Obstruction of highway—Fence within limits of turnpike road—Injunction—Equity—Estoppel—Burden of proof—Presumption of width—Test case—Costs.*

1. Where a definite boundary line of a turnpike road is disclosed by the presence of a fence placed when the road was first laid out, by direction or with the consent of the duly authorized officers or subsequently fixed by them an estoppel may be worked, so as later to prevent an alteration of the situation to the detriment of the abutting owner.

2. But where a fence was constructed at a later date than the laying out of the road, the burden is on the abutting owner, who asserts a change in the presumed line of the road to explain.

3. Mere nonuser of a turnpike road, or a part thereof, though continued for a long period of years, gives no right to one who has encroached upon it; nor will the abandonment of the road, and its acquirement by the State as a part of its highway system, divest the rights of the public.

4. Unless overcome by the evidence of the appropriation of a less amount, it will be presumed that a sufficient width of the road has been taken, and the extent is determined by the order of the court laying it out or the act of assembly authorizing its construction.

5. The rights of the individual are subordinate to those of the State, and no damages for injuries arising from the construction of roads can be awarded unless given by statute, and the procedure therein prescribed must be necessarily followed.

6. A turnpike road will be assumed to have been opened as legally directed, and the center line of the road as opened upon the ground is the point from which the boundaries are to be determined.

7. The mere fact that the entire width of the road was not immediately occupied does not deprive the public of any part of the road when desired.

8. Where the Commonwealth provided that a turnpike road should be built of a width of not less than forty, nor more than fifty feet, and the road was built of a width of forty feet, an encroachment by a fence built within the minimum width designated, although continued for forty years, is illegal and the fence will be abated after the road has been taken over by the Commonwealth as a part of its highway system.

9. In such case, where it appears that the bill was filed by an abutting owner and treated as a test case, the costs may be properly imposed upon the Commonwealth.

Argued, April 13, 1926.   Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 37, March T., 1926, by plaintiff, from decree of C. P. Somerset Co., No. 8, Equity, 1924, dismissing bill in equity in case of Samuel Lenhart v. Paul D. Wright, Secretary of Highways, F. E. Goodhart, Superintendent of District, et al.   Affirmed.

Bill for injunction.   Before BERKEY, P. J.
The opinion of the Supreme Court states the facts.
Bill dismissed.   Plaintiff appealed.

*Error assigned* was, inter alia, decree, quoting record.

*Percy Allen Rose,* with him *Uhl & Ealy,* for appellant. —Plaintiff was entitled to the uninterrupted enjoyment of his property and any substantial interference with such enjoyment involves an injury to him which could not be measured by any monetary standard but is of such a nature that calls for the intervention of a court of equity: Melvine v. Stone Co., 94 Pac. 390; Taylor v. Sauer, 40 Pa. Superior Ct. 229.

The fact that this turnpike company in exercising the privilege of condemning a turnpike of the width of not less than forty nor more than fifty feet did not indicate in anywise or at any time the extent of its condemnation by any marks on the ground or by any act of possession or user, takes the instant case out of realm of the decisions cited by the chancellor.

In the absence of marks on the ground the width of the turnpike was established by the fence lines of abutting property owners: Com. v. Miltenberger, 7 Watts 450; Com. Title Ins. & T. Co. v. Plank Road, 17 Montg. Co. Law R. 76; Providence & A. Turnpike & P. Co. v. Reap,

5 Lack. J. 251; Penna. R. R. v. Guthrie, 66 Pa. Superior Ct. 470.

*James O. Campbell,* First Deputy Attorney General, with him *George W. Woodruff,* Attorney General, *C. L. Shaver* and *J. L. Shelley, Jr.,* for appellee.—The turnpike company is presumed to have appropriated an easement at least forty feet in width: P. & R. R. R. Co. v. Obert, 109 Pa. 193, 203; Jones v. R. R. Co., 144 Pa. 629; Stevenson's App., 17 W. N. C. 429; Stockley v. Bridge Co., 5 Watts 546; Com. v. Miltenberger, 7 Watts 450; P. R. R. Co. v. Guthrie, 66 Pa. Superior Ct. 470.

A turnpike road, duly opened and used as such, is a public highway: Northern Central Ry. v. Com., 90 Pa. 300; Pitts., McK. & Y. R. R. v. Com. 104 Pa. 583.

Encroachments upon a turnpike road do not affect the right to occupy the authorized width: Pittsburgh v. R. R., 263 Pa. 294; Kopf v. Utter, 101 Pa. 27; McMurtrie v. Stewart, 21 Pa. 322; Templeton v. Coal Co., 50 Pa. Superior Ct. 341.

A fence located at any place within the authorized width, even though not on the traveled portion, is within the limits of the public highway: Com. v. Jackson, 10 Pa. Superior Ct. 524; Com. v. Marshall, 137 Pa. 170; Glenn v. Com., 8 Sadler 134; McGuire v. Wilkes-Barre, 36 Pa. Superior Ct. 418; Com. v. McNaugher, 131 Pa. 55; Com. v. Kembel, 30 Pa. Superior Ct. 199; McMurtrie v. Stewart, 21 Pa. 322; Com. v. Shoemaker, 14 Pa. Superior Ct. 194.

OPINION BY MR. JUSTICE SADLER, May 3, 1926:

In 1806, the general assembly directed the building of a turnpike road from Harrisburg to Pittsburgh (Statutes at Large, February 24, page 73), and prescribed that the same should be constructed to a width of not more than fifty feet. Provision was made for the carrying on of the work in sections by separate companies, and, by the Act of March 18, 1816, P. L. 170, a

corporation was authorized to lay out the part between Somerset and Bedford. By this act the right was given to enter upon lands necessary for the making of the roadbed, and the procedure fixed for assessment of damages which might be specially suffered by any owner of abutting land, to be determined by viewers appointed upon his application, provided such request was made within the period of one year after occupation of the property affected.

On April 8, 1833, the formation of the Somerset and Conemaugh Turnpike Company, later known as the Somerset and Johnstown Road, was authorized, with the power to enter and take lands necessary for building between the points named. Section 5, of the act so permitting (April 8, 1833, P. L. 365), directed that "the president and managers of the said road shall make, or cause to be made [a highway], not less than 40 nor more than 50 feet in width, and at least twenty feet thereof shall be made an artificial road." The powers, rights and privileges conferred by the Act of 1816 on the Somerset and Bedford Turnpike, above referred to, and with which the new highway connected, were extended to the proposed corporation. It was chartered on March 7, 1836, and built as permitted by the act of assembly. The Sproul Act of 1911 (P. L. 468, sec. 6), made provision for the taking over by the State of such roads, forming parts of main traveled thoroughfares, and by the Act of July 22, 1913, P. L. 948, amended June 7, 1915, P. L. 860, and June 27, 1923, P. L. 852, Route 317 was established, covering the location of the turnpike now in question. As allowed by the Act of 1911, a survey of the road as defined was made, following the lines of the old highway, and, by legal proceedings authorized by the Act of June 1, 1915, P. L. 691, the latter was condemned and taken over by the State.

The Commonwealth awarded a contract for its rebuilding, and the actual work was completed in 1922, passing through the property of Lenhart, the complain-

ant. A year after the work was finished, he erected a stone wall on the west side, within the 40-foot minimum limit of the original turnpike, which had been taken over as Route 317, and refused to remove the same after notice, claiming it was properly placed on the boundary line, indicated by old fences standing in the same position as they had been for 40 years. The highway department abated the alleged nuisance. This bill was then filed to restrain further interference with the structure claimed to be on the land of plaintiff, and also asking that the defendant be required to restore the wall to the condition in which it was found at the time of its demolition. A preliminary injunction was granted, but, after final hearing, it was dissolved. From the decree entered, complainant appeals.

Plaintiff testified, and the learned court below found, that the new concrete road was in the same location as the old turnpike, later condemned. The width, fixed by act of assembly nearly ninety years before the institution of the present proceeding, was not less than forty feet, and the wall had been constructed within twenty feet of the center line of the then established thoroughfare. No evidence, record or otherwise, showed the physical manner in which the highway had been originally laid out, nor were there any defined markers to indicate the lines of the right of way. The court found that old fences had been in existence for forty years,— a fact disputed by the appellee, but not the subject of exception, and, therefore, not to be considered here,— but there was no testimony indicating the erection of any structure defining the limits at, or near, the time the road was actually built. It is true that, where a definite boundary line is disclosed by the presence of some building or fence placed when the improvement is made, by direction, or with consent, of the duly authorized officers, or the line has been subsequently fixed and designated by them, an estoppel may be worked, so as later to prevent an alteration of the situation to the

detriment of the abutting owner: Com. v. Miltenberger, 7 Watts 450; Gailey v. Wilkinsburg Trust Co., 283 Pa. 381. But, ordinarily, the public rights are not to be considered as surrendered (Pittsburgh v. Epping-Carpenter Co., 194 Pa. 318; Kopf v. Utter, 101 Pa. 27), and the burden of proof to establish the alteration, rests on the one who asserts the change in the presumed line: Mitchell v. Bovard, 279 Pa. 50.

Mere nonuser of the bed of the road, or a part thereof, though continued for a long period of years, gives no right to the one who has encroached (Schmitt v. Carbondale, 257 Pa. 451; W. N. Y. & P. Ry. Co. v. Machine Co., 251 Pa. 383; Templeton v. L. & W. B. Coal Co., 50 Pa. Superior Ct. 341), nor will the abandonment of a turnpike, and its acquirement by the State as a part of its highway system, divest the rights of the public: Com. v. Koontz, 258 Pa. 64. The continuance of any obstruction, unless there be some act of estoppel, as noted, may be restrained (Stivason v. Serene, 80 Pa. Superior Ct. 1), abated by the proper authorities (Keystone State Tel. Co. v. Ridley Park Bor., 28 Pa. Superior Ct. 635; McGuire v. Wilkes-Barre, 36 Pa. Superior Ct. 418), or the parties responsible may be indicted for the maintenance of a nuisance: Com. v. Moorhead, 118 Pa. 344; Com. v. McNaugher, 131 Pa. 55; Com. v. Kembel, 30 Pa. Superior Ct. 199.

Unless overcome by evidence of the appropriation of a less amount, it will be presumed that a sufficient width for public use has been taken (Penna. Canal Co. v. Harris, 101 Pa. 80), and the extent is determined by the order of the court laying out the public highway, or the act of assembly authorizing the construction. The law presumes that the appropriation was of the width directed, and, after the passage of time such as here appears, that due compensation was paid to the abutting owner, if any damage was sustained by him: Carter v. Ridge Turnpike Co., 208 Pa. 565. Particularly is this conclusion to be reached where the enabling act provided

that the owner should ask for the appointment of viewers within one year, if he felt himself aggrieved by the location of the new highway, and failed to do so: Stokely v. Robbstown Bridge Co., 5 Watts 546. The rights of the individual are subordinate to those of the State, and no damages for injuries arising from the construction of roads can be awarded unless given by statute (Snively v. Washington Twp., 218 Pa. 249), and the procedure therein prescribed must necessarily be followed.

In the absence of a showing to the contrary, the public highway,—and a turnpike road is such (N. C. Ry. Co. v. Com., 90 Pa. 300; P. M. & Y. R. R. Co. v. Com., 104 Pa. 583),—is assumed to have been opened as legally directed. If this has been ordered by the court, then the location actually made by the supervisors on the ground controls, rather than the courses and distances designated in the report of the viewers (Com. v. Dicken, 145 Pa. 453; Com. v. Marshall, 137 Pa. 170; McMurtrie v. Stewart, 21 Pa. 322; Com. v. Jackson, 10 Pa. Superior Ct. 524; Com. v. Plymouth Twp., 19 Pa. Superior Ct. 408), and, where the opening is by direction of the legislature; the acts of those to whom the duty of building has been given fix the boundaries. In either case, the center line of the road as opened upon the ground is the point from which the sides are to be determined: Furniss v. Furniss, 29 Pa. 15; Athens Boro. v. Carmer, 169 Pa. 426; Waldschmidt v. Glenfield Boro., 60 Pa. Superior Ct. 538. The court has here found upon competent evidence,—and this is controlling upon us (Boyd v. Miller, 57 Pa. Superior Ct. 325),—that the center line of the reconstructed road is the same as that of the old turnpike, and that the wall in question is within twenty feet thereof. The mere fact that the entire width was not immediately occupied does not deprive the public of the benefit of any part when desired: Pittsburgh v. P. & L. E. R. R. Co., 263 Pa. 294; Stevenson's App., 17 W. N. C. 429; Com. v. Llewellyn, 14 Pa. Superior Ct. 214.

The turnpike was directed to be built of a width of
not less than forty, nor more than fifty feet. There is a
presumption that the occupation of land was to the ex-
tent indicated, when the Commonwealth has authorized
the taking and exercise of the right of eminent domain
for such purpose. The application of this rule is fre-
quently found in the case of railroads, where the use
of the full number of feet permitted is assumed to have
been intended when an appropriation of land is made:
Foley v. Beech Creek R. R. Co., 283 Pa. 588; Jones v.
R. R., 144 Pa. 629; Williams v. D., L. & W. R. R. Co.,
255 Pa. 133; Dilts v. Plumville R. R. Co., 222 Pa. 516.
Of course, such right may be limited, and be evidenced
by maps indicating the taking of a less part, or by deeds,
releases or acts negativing such intention to occupy
all permitted: P. & R. R. R. Co. v. Obert, 109 Pa. 193;
Marshall v. Penna. Co., 44 Pa. Superior Ct. 68. But
no such situation appears here. Not only was there
granted the power to take forty feet, but the legislature
directed that the highway should be opened to at least
that width, and provided a method by which full com-
pensation could be secured, if the abutting owner be-
lieved damage would result. If only the maximum ex-
tent has been designated in the act, there is a legal pre-
sumption that the full amount was taken, as we have
seen. There is even more reason to so hold where the
legislature fixed a minimum. The effect of thus desig-
nating the least width to be appropriated has not been
the subject of discussion by the appellate courts of this
State, so far as we have been able to discover, but the
question has frequently been considered in other juris-
dictions, which uniformly hold that, under such circum-
stances, encroachments within the minimum distance
designated, though long continued, are illegal: Schnei-
der v. Brown Twp., 142 Mich. 45, 105 N. W. 13; Mc-
Garry v. Runkel, 118 Wis. 1, 94 N. W. 662; Smith v.
Ess, 125 N. Y. Supp. 450; Taylor v. Austin, 83 Neb.

581, 119 N. W. 1123; Hentzler v. Bradbury (Kansas), 47 Pac. 330.

In view of the findings of the learned court below that the turnpike was located under the Act of 1833, at a width not less than forty feet, its center line fixed, the new highway constructed on the same location, and that the wall encroaches on the western half, the injunction prayed for was properly refused. As stated in the decree entered, this proceeding was brought in good faith as a test case, and, under the circumstances, the costs were directed to be paid by the Commonwealth. With this conclusion we agree, and a like order will be entered here.

The decree is affirmed, the costs to be paid by the appellee.